**EXHIBIT D.1
TO SUPERVALU
ELECTRONIC TRANSACTION AGREEMENT**

**Form of Merchant Agreement**

This Agreement is entered into the day and date set forth below by and between CTS Holdings, LLC ("Concord"), Citicorp Payment Services, Inc. ("Bank") as successors in interest to EFS National Bank (collectively, "Servicers") and the undersigned _____, with offices at _____ ("Merchant"). In consideration of the mutual covenants herein, Servicers and Merchant agree to the following terms and conditions.

a. **ACCEPTANCE OF BANK CARDS.** Merchant agrees to promptly honor all valid and current cards issued by Associations, or other cards as Servicers and Merchant may mutually agree from time to time , for which Servicers provide transaction services when properly presented as payment for merchandise or services by a Cardholder. Merchant shall not establish minimum or maximum transaction amounts as a condition to honoring the Card, and shall not impose any surcharge on transactions, shall not make cash advances unless expressly permitted under the Association in which such Card participate. Merchant agrees to display the service marks of a Association in accordance with the respective Association Rules.

b. **AUTHORIZATION.** Except as provided in the following sentence, Merchant must obtain approval of each credit card transaction by swiping a Card through a POS Terminal. If a POS Terminal is not able to initiate a credit card transaction or receive a response, Merchant shall call Servicers' voice authorization unit or, if permitted under the Association Rules of the applicable Association and agreed by Servicers, by storing the credit card transaction message for later submission for authorization ("Store & Forward Mode"). Merchant understands and agrees that there is no assurance that credit card transactions accepted in Store & Forward will be approved or paid when submitted. Merchant further understands and agrees that obtaining authorization does not constitute a guaranty of payment and does not release Merchant of liability for chargebacks. The Cardholder must present the Card and the Card must be swiped through the POS Terminal to entitle Merchant to receive payment. Merchant shall not seek more than one authorization for a single form of payment in connection with the same transaction.

c. **COMPLIANCE WITH RULES AND REGULATIONS.**
Merchant acknowledges that it has received the Operating Procedures, the terms of which are incorporated into this Agreement. Merchant agrees to follow the procedures in the Operating Procedures in connection with each Card transaction and to comply with all applicable Association Rules. If Merchant loses or otherwise misplaces the Operating Procedures or notices of changes thereto, Merchant shall be responsible for contacting Servicers to obtain replacement copies.

d. **SALES DRAFT PROCEDURE.** Merchant will be provided with sales drafts ("Sales Drafts") to record credit card transactions. The Merchant must date each Sales Draft, include a brief description of the merchandise and/or services sold and specify the aggregate price thereof (including any applicable taxes). The Merchant must compare the signature on the Sales Draft with the signature appearing on the Card. The Merchant agrees to emboss (imprint) the Sales Draft with the information on the Card. A Sales Draft generated by an electronic printer as the Card is swiped through a POS Terminal connected to the printer will be accepted as an embossed or imprinted Sales Draft. Merchant must obtain the Cardholder's signature on the Sales Draft whether it is embossed or electronically printed. If the Card information cannot be read by the POS Terminal and must be manually entered, the Sales Draft must be embossed manually.. The Sales Draft must include the total cash price of the sale , the authorization code, the account number, the Card expiration date, the Cardholder name, the transaction date, the merchant name and location, a brief description of the sale and any additional information Servicers reasonably requires in order to comply with Association Rules or applicable law or regulations. The Merchant shall deliver to the Cardholder a true and complete copy of the Sales Draft at the time of delivery of goods or performance of services. In order to prove that the Sales Draft has been properly completed, Merchant agrees to retain a copy of the Sales Draft, other than the copy given to Cardholder, for a period of at least three (3) years after the date of the transaction, unless otherwise required by Servicers. At the request of Servicers, Merchant shall deliver to Servicers Merchant's copy of any Sales Draft so requested, according to the procedures set by Servicers. In the event that Merchant fails to deliver such Sales Draft, Merchant shall be liable to Servicers for the transaction amount and any other damages assessed to Servicers through the Association, which result from the failure to retain Sales Drafts.

e. **PAYMENT.** Servicers will pay Merchant daily through the automated clearing house ("ACH") system for all authorized transactions. Servicers will debit Merchant's designated settlement account monthly in the amount of the interchange fees owed through the Associations. Merchant may be billed for the services provided to Merchant hereunder by SUPERVALU INC. ("SUPERVALU"). In the event that Merchant is billed by SUPERVALU, Merchant shall be billed monthly the fees and charges set forth on Schedule A (other than Visa and MasterCard interchange fees) for the services provided by Servicers to Merchant hereunder. Merchant shall pay such invoices promptly upon receipt, but in no event later than seven (7) days following the date of the invoice. If Merchant is not billed by

EXHIBIT A

SUPERVALU, then Servicers may deduct at the end of each month from Merchant's settlement the fees and charges set forth on Schedule A. Merchant must reconcile transactions monthly with Servicers, and Merchant hereby waives the right to collect for any transaction not reconciled within one hundred twenty (120) days of the date of the transaction. Servicers shall not increase the fees and charges provided in Schedule A (other than Interchange fees, which may be modified on a pass through basis) except at the expiration of a term of the Agreement, except that Servicers shall be entitled to increase fees and charges at any time and pass them through to Merchant to offset direct increases to Servicers in the costs of providing the services hereunder to the extent changes in the Association Rules, fees or operation procedures of card issuers, card networks, or federal, state, or local governmental authority results in such cost increase. Any such increases shall become effective on the date Servicers notifies Merchant of such increases in writing. Servicers shall make a good faith effort to provide Merchant at least thirty (30) days prior written notice of such fee increases provided that Servicers itself receives sufficient prior written notice to provide such notification. If any such fee increases (other than Interchange fees) in the aggregate in any calendar exceed ten (10%) of the fees charged hereunder in such year, Merchant may terminate this Agreement by providing sixty (60) days prior written notice to Servicers. Servicers' charges are exclusive of, and Merchant shall pay, any and all third-party fees and charges associated with the use of Servicers' services, as modified by such third parties from time to time, including without limitation all telecommunications costs (except for toll charges relating to dial-up transactions) and all Association fees and charges.

f. **RETURNED MERCHANDISE.** If any merchandise is accepted for return or any services are terminated or canceled, or any price adjustment is allowed by Merchant with respect to any credit card Transaction, Merchant shall not make any cash refund to the customer but shall issue promptly to Servicers via the POS Terminal for deposit a credit voucher evidencing such refund or adjustment. The refund or adjustment indicated by the credit voucher may not exceed the original transaction amount.

g. **ERRONEOUS PAYMENTS.** Merchant shall not accept any payments from customer for merchandise and/or services if the purchase has been transmitted to Servicers via the POS Terminal and an approval has been received. Any such remittance that is inadvertently received by Merchant will be segregated and promptly delivered to Servicers properly endorsed or signed, or the Merchant shall prepare a credit voucher on the POS Terminal for the purpose of effecting a deposit to the Cardholder's account.

h. **WARRANTIES AND REPRESENTATIONS.** Merchant agrees that it will be bound and abide by the Association Rules and procedures of an Association and Merchant further warrants and represents, to the best of its knowledge, that each Sales Draft prepared and each transaction transmitted to Servicers, as of the time of such preparation and submission, represents a valid obligation for the amount set forth therein, the transaction is not subject to any disputes, set offs, or counterclaims, is valid in form and complete on its face in accordance with instructions described above, is signed by Cardholder to whom Merchant has actually sold the merchandise or services on the date thereof, that the Sales Draft was personally signed by Cardholder and the signature corresponds with the signature on the Card, that all statements on the Sales Drafts are true, that Merchant has no knowledge which would impair the validity of the Sales Draft, that the Merchant has performed all of its obligations with respect to the sales transaction, that the sale does not involve any element of credit except to sell the merchandise or service and there have been no carrying charges or fees for acceptance of a credit card or any other condition or requirement that is discriminatory against the acceptance of such credit cards. Merchant warrants that merchandise has been delivered and/or services rendered to the Cardholder in satisfaction of the underlying obligation. Merchant represents and acknowledges that monies received by Servicers for payment to Merchant are not the property of Merchant until actually delivered to Merchant. Each party warrants that all proprietary information disclosed by either party to the other in connection with this Agreement shall be held in confidence and protected by the recipient party from disclosure to others and further warrants that it will not be copied or used in any way other than as specifically authorized in this Agreement.

i. **DEBIT/EBT.** Servicers will provide switching services to national and regional debit networks associated with acceptance of debit/EBT cards at Merchant locations and debit and EBT card draft capture and settlement, as described in Schedule B.

j. **PRICING AND FEES.** Merchant agrees to pay all fees and charges associated with the services provided hereunder in accordance with Schedule A of this Agreement. Merchant acknowledges and agrees that the schedule of fees and charges has been provided pursuant to a separate written agreement between Servicers and SUPERVALU, and is subject to modification by Servicers in the event that (a) the relationship between Merchant and SUPERVALU expires or is terminated or (b) the separate written agreement between Servicers and SUPERVALU is modified or terminated. In the event of termination of the separate written agreement between Servicers and SUPERVALU, or termination of Merchant's relationship with SUPERVALU, the fees and charges applicable on the date of termination are subject to change by Servicers.

k. **CHARGEBACKS.** Merchant authorizes Servicers to charge back any transaction which breaches the terms of this Agreement and/or the Association Rules and procedures of a Association. Transactions that have been charged back and not re-presented may not be reauthorized. Merchant will be notified for receipt requests or chargebacks. Merchant will have twenty-one (21) days to provide response to an initial or second request from Servicers. Once the response is received, Servicers will determine if the response is in compliance with Visa and MasterCard Association Rules and regulations and forward a compliant response to an Association or issue a chargeback. If after twenty-one (21) days the Merchant fails to respond and a chargeback results, the

chargeback will be issued with no recourse from Merchant.

l. **RESERVES.**

(a) Merchant authorizes Servicers to establish a Reserve Account pursuant to the terms and conditions set forth in this Section l. Servicers will establish such account, in their sole reasonable discretion, upon the occurrence of an Event of Default, the occurrence of fraud or suspected fraud, the provision of notice of termination of this Agreement or any other instance in which Servicers determine in their commercially reasonable judgment that such an account is required in order to assure payments to Servicers of any and all obligations of Merchant due under this Agreement. In the event that Servicers exercise their right to establish a Reserve Account, the amount of such account shall be determined in SERVICERS' commercially reasonable discretion but will not exceed the sum of nine (9) months of Chargebacks, two (2) months of credits/adjustments, the value of any goods and/or services billed in advance of fulfillment, the amount of any fees or discount due SERVICERS plus the amount of any current or anticipated Association fees or fines. The calculation for the credits and Chargebacks portion of the Reserve Account will be, based upon Merchant processing history and the anticipated risk of loss to Servicers.

(b) The Reserve Account shall be fully funded upon three days notice to Merchant, or in instances of fraud, suspected fraud or an Event of Default, Reserve Account funding may be immediate. Such Reserve Account may be funded by all or any combination of the following: (i) one or more debits to Merchant's Settlement Account or any other accounts held by BANK or any of its affiliates;(ii) deductions or offsets to any payments otherwise due to Merchant; (iii) Merchant's delivery to Servicers of a letter of credit; or (iv) if Servicers so agree, Merchant's pledge to Servicers of a freely transferable and negotiable certificate of deposit. Any such letter of credit or certificate of deposit shall be issued or established by a financial institution acceptable to Servicers and shall be in a form satisfactory to Servicers. In the event of termination of this Agreement by either Merchant or Servicers, an immediate Reserve Account may be established without prior notice in the manner provided above. Any Reserve Account will be held by BANK for the greater of ten months after termination of this Agreement or for such longer period of time as is consistent with BANK's liability for Card transactions in accordance with Association Rules. Merchant's funds held in a reserve account may be held in a commingled Reserve Account for the reserve funds of BANK's customers, without involvement by an independent escrow agent.

(c) If Merchant's funds in the Reserve Account are not sufficient to cover the Chargebacks, adjustments, fees and other charges due from Merchant, or if the funds in the Reserve Account have been released, Merchant agrees to promptly pay Servicers such sums upon request. In the event of a failure by Merchant to fund the Reserve Account, Servicers may fund such Reserve Account in the manner set forth in subsection (b) above.

(d) To secure Merchant's obligations to Servicers and their affiliates under this Agreement and any other agreement for the provision of related equipment or related services, Merchant grants to Servicers a lien and security interest in and to the Reserve Account and any of Merchant's funds pertaining to the Card transactions contemplated by this Agreement. Any such funds, money or amounts may be commingled with other funds of Servicers, or, in the case of any funds held pursuant to the foregoing paragraphs, with any other funds of other customers of Servicers. In addition to any rights now or hereafter granted under applicable law and not by way of limitation of any such rights, Servicers are hereby authorized by Merchant at any time and from time to time, without notice or demand to Merchant or to any other person (any such notice and demand being hereby expressly waived), to set off, recoup and to appropriate and to apply any and all such funds against and on account of Merchant's obligations to Servicers and their affiliates under this Agreement and any other agreement with Servicers or any of Servicers' affiliates for any related equipment or related services (including any check guarantee and check verification services), whether such obligations are liquidated, unliquidated, fixed, contingent, matured or unmatured. Merchant agrees to duly execute and deliver to Servicers such instruments and documents as Servicers may reasonably request to perfect and confirm the lien, security interest, right of set off, recoupment and subordination set forth in this Agreement.

m. **RECORDS.** Merchant agrees, upon Servicers' request to provide Servicers quarterly financial statements of Merchant within 60 days after the end of each fiscal quarter and annual financial statements within 90 days after the end of each fiscal year. Such financial statements shall be prepared in accordance with generally accepted accounting principles. Merchant also shall provide such other information concerning the nature and methods of Merchant's business and Merchant's compliance with the terms and provisions of this Agreement as SERVICERS may reasonably request. Servicers, upon giving reasonable notice, shall have the right to examine Merchant's books, records, and other papers relative to transactions or Sales Drafts delivered to Servicers during Merchant's normal office hours.

n. **TERM AND TERMINATION.**

(a) This Agreement shall become effective when accepted by Servicers and shall remain in full force and effect for a period of three (3) years, from that date Unless sooner terminated as provided below, this Agreement shall continue in effect thereafter until terminated by either party upon ninety (90) days written notice to the other party.

(b) Servicers may, at its sole option, terminate Merchant's ability to accept credit, debit or EBT cards from certain participating Institutions or Associations if an Institution or Association notifies Servicers: (1) that it has reason to believe Merchant has originated unauthorized transactions to a cardholder's account; (2) there are an excessive number of transactions subject to chargeback; (3) Merchant has violated or failed to comply with security provisions in this Agreement in or any Merchant Services Agreement; or (4) if in Servicers reasonable discretion, such termination is necessary for Servicers to comply with their obligations under any applicable law, Association Rule or regulation including, but not limited to, the Office of Foreign Assets Control ("OFAC") Regulations and Association Rules. In the event of termination pursuant to this paragraph, Merchant shall immediately cease using the notifying Institution's or Association's decals and signs.

(c) Notwithstanding anything herein to the contrary, if any of the following events shall occur (each an "Event of Default"): (i) a material adverse change in the business, financial condition, business procedures, products or services of Merchant; or (ii) any assignment or transfer of voting control of Merchant or its parent; or (iii) a sale of all or a substantial portion of Merchant's assets; or (iv) material irregular Card sales by Merchant, excessive Chargebacks, breach or suspected breach of Merchant's security or failure to comply with any and all security provisions of this Agreement or any security requirements of any Association; or (v) any representation or warranty of Merchant in this Agreement is breached in any material respect or was or is incorrect in any material respect when made or deemed to be made; or (vi) Merchant shall default in any material respect in the performance or observance of any term, covenant, condition or agreement contained in this Agreement; or (vii) Merchant shall default in any material respect in the performance or observance of any term, covenant or condition contained in any agreement with any affiliate of Servicers, including, but not limited to, any agreement governing check guarantee or check verification services; or (viii) Merchant shall default in the payment when due, whether upon maturity or otherwise, of any material indebtedness for borrowed money or any material trade payable; or (ix) Merchant shall: commence a voluntary case under the Bankruptcy Code; file a petition seeking to take advantage of any other laws, domestic or foreign, relating to bankruptcy, insolvency, reorganization, winding up or entry into a composition agreement or similar arrangement for adjustment of debts; consent to or fail to contest in a timely and appropriate manner any petition filed against it in an involuntary case under such bankruptcy laws or other laws; apply for or consent to, or fail to contest in a timely and appropriate manner, the appointment of, or the taking of possession by, a receiver, custodian, trustee, or liquidator of itself or of a substantial part of its property, domestic or foreign; generally become unable to pay its debts or trade obligations as they become due; make a general assignment for the benefit of creditors; or take any corporate action for the purpose of authorizing any of the foregoing; or (x) a case or other proceeding shall be commenced against Merchant, in any court of competent jurisdiction seeking relief under the Bankruptcy Code or under any other laws, domestic or foreign, relating to bankruptcy, insolvency, reorganization, winding up or adjustment of debts, the appointment of a trustee, receiver, custodian, liquidator or the like of Merchant, or of all or any substantial part of the assets, domestic or foreign, of Merchant, and such case or proceeding shall continue undismissed or unstayed for a period of sixty (60) consecutive days, or an order granting the relief requested in such case or proceeding against Merchant (including, but not limited to, an order for relief under the Bankruptcy Code) shall be entered; or (xi) the independent certified accountants retained by Merchant shall refuse to deliver an unqualified opinion with respect to the annual financial statements of Merchant and its consolidated subsidiaries;
then, (1) upon the occurrence of an Event of Default specified in subparagraphs (iv), (ix) or (x) above, Servicers may terminate this Agreement immediately by giving written notice of termination to Merchant and all amounts payable hereunder by Merchant to Servicers shall be immediately due and payable in full without demand or other notice of any kind, all of which are expressly waived by Merchant, and (2) upon the occurrence of any other Event of Default, Servicers may provide Merchant with written notice of termination at least twenty (20) days before the effective date of such termination and, in the event that Merchant fails to cure such Event of Default during such twenty (20) day notice period, this Agreement shall terminate and all amounts payable hereunder by Merchant to Servicers shall be immediately due and payable in full upon demand.

(d) Servicers shall notify Merchant of the termination of the separate agreement between SUPERVALU and Servicers as soon as reasonably possible. Within sixty (60) days of delivery of such notice by Servicers, either party may terminate this Agreement upon sixty (60) days written notice.
(e) Upon termination of this Agreement, Servicers and Merchant shall cooperate as may be reasonably necessary to ensure the orderly processing of transactions and the transfer of Merchant to new EFT service providers. Termination of this Agreement shall not affect any obligation assumed or incurred and existing as of the date of the termination. Following termination of this Agreement, Merchant shall no longer honor cards or use any of the materials issued under this Agreement.
(f) Merchant may also terminate this Agreement immediately in the event that Servicers shall go into liquidation, suffer the appointment of a receivership of its assets, go into bankruptcy, voluntarily or involuntarily, or otherwise take advantage of any insolvency laws, or upon any voluntary or involuntary sale, transfer, or other disposition (including transfer by operation of law) of substantially all of its assets.
(g) The parties acknowledge that the VISA and MasterCard Association Rules give VISA and MasterCard certain rights to require termination or modification of this Agreement with respect to transactions involving VISA and MasterCard Cards and the VISA and MasterCard Card system and to investigate Merchant. The parties also acknowledge that issuers of other Cards, for which Servicers perform services on behalf of Merchant, may have similar rights under their applicable Association Rules with respect to this Agreement's applicability to transactions involving such other Cards.

o. **EXCLUSIVE AGREEMENT.** Merchant agrees that the EFT Services and Products provided hereunder (with the exception of EFT Hardware or EFT Software purchases) shall be exclusive during the term of this Agreement and that Merchant shall not enter into agreements with other EFT services Providers to receive services similar to those provided by Servicers during the term hereof.

p. **MISCELLANEOUS.** This Agreement, together with the policies and procedures of Servicers related to Merchant authorizations, as modified from time to time, which are incorporated herein by reference, constitute the full agreement of the parties with respect to the subject matter hereof, and no waiver, alteration, or modification of any of the provisions hereof, except for revised Merchant Data Sheet(s) or modification to the Servicers policies and procedures, shall be binding unless in writing and signed by authorized representatives of both parties. This Agreement shall become effective when accepted by Servicers and shall remain in effect until terminated as provided herein. Any notice under this Agreement shall be deemed to have been duly given when mailed to the party at the address first given above, or as otherwise provided. Merchant expressly agrees to pay Servicers on demand any and all indebtedness incurred pursuant to this Agreement including any costs and/or expenses that may be incurred by Servicers in any attempt to investigate any claim or enforce

any provision of this Agreement or to collect any Indebtedness Incurred pursuant to this Agreement, including but not limited to court costs and all expenses and reasonable attorneys' fees. This Agreement cannot be assigned to any party by Merchant, but will be binding upon and inure to the benefit of Merchant's heirs, personal representatives, and successors. The obligations of Servicers hereunder may be performed by any parent, affiliate, or successor corporation of Servicers. This Agreement shall be construed and enforced in accordance with the internal laws of the State of Tennessee without reference to choice of law Association Rules. Any legal action, including an original complaint or third party claim, by or in the right of any party to this Agreement or any action arising under or in any way related to this Agreement, including but not limited to a claim for payment under the Agreement, and also including any non-contract claim (collectively "Claims"), shall be brought and maintained exclusively in a state or federal court of competent subject matter jurisdiction in Shelby County, Tennessee and the parties hereby submit themselves to the personal jurisdiction and venue of those courts for the purpose of any such action and hereby waive any defense related to personal jurisdiction, process, or venue.

q. **LIMITATION OF LIABILITY - INDEMNIFICATION.**

(a) No Warranties. Except for warranties expressly denominated as such herein, Servicers makes no other warranties, either express or implied, of any kind. Servicers expressly disclaim, and Merchant expressly waives, any and all warranties express or implied including without limitation those of merchantability or fitness for a particular purpose (irrespective of any course of dealing between the parties). The services hereunder are not warranted to be free from error or interruption. No descriptions or specifications, whether or not incorporated into this Agreement shall constitute warranties of any kind. The parties further agree that any delivery of goods hereunder is purely incidental to the provision of services by Servicers and that this Agreement is not subject to the Uniform Commercial Code.

(b) Indemnification. Merchant shall indemnify Servicers and each Association and hold them harmless from and against any and all claims, demands, losses, costs, liabilities, damages, judgments, or expenses arising out of or relating to (i) any material breach by Merchant of its representations, warranties, or agreements under this Agreement, (ii) any act or omission by Merchant that violates any applicable federal, state, or local laws, Association Rules, or regulations, or which violates any operating Association Rules or regulations of and each Association, or (iii) any negligent act or negligent omission or intentionally wrongful conduct of Merchant or of its agents, employees, or other persons or entities acting on its behalf under this Agreement. Servicers shall indemnify the Merchant, and each Association and hold them harmless from and against any and all claims, demands, losses, costs, liabilities, damages, judgments, or expenses arising out of or relating to (i) any material breach by Servicers of its representations, warranties, or agreements under this Agreement, (ii) any act or omission by Servicers which violates any applicable federal, state, or local laws, Association Rules, or regulations, or which violates any operating Association Rules or regulations of and each Association, or (iii) any negligent act or negligent omission or intentionally wrongful conduct of Servicers or of its agents, employees, or other persons or entities acting on its behalf under this Agreement.

(c) Force Majeure. In the event either party hereto shall be delayed or hindered in or prevented from the performance of any act required under this Agreement by reason of strikes, lockouts, labor troubles, inability to procure materials, failure of power, equipment failure not caused by gross negligence or intentional misconduct of such party in maintaining such equipment, restrictive governmental law or regulations, riots, insurrection, war, or other reason of a like nature not the fault of the party delayed in performing work or doing acts required under the terms of this Agreement, then performance of such act shall be excused for the period of the delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.

(d) Limitation. EXCEPT WHERE SUCH LIABILITY ARISES FROM AND IS DIRECTLY RELATED TO A THIRD PARTY CLAIM, IN NO EVENT SHALL EITHER PARTY'S LIABILITY OF ANY KIND TO THE OTHER HEREUNDER INCLUDE ANY SPECIAL, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL LOSSES OR DAMAGES, EVEN IF SUCH PARTY SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH POTENTIAL LOSS OR DAMAGE. THE INDEMNITY FOR CLAIMS BY THIRD PARTIES WILL BE GOVERNED BY, BUT NOT LIMITED TO SECTION 16(b). NOTWITHSTANDING ANY PROVISION CONTAINED IN THIS AGREEMENT TO THE CONTRARY, THE LIABILITY OF SERVICERS FOR ANY COST, LOSS, DAMAGE, OR OTHER POTENTIAL OR ACTUAL EXPENSE WHICH IS IN ANY WAY RELATED, DIRECTLY OR INDIRECTLY, TO THE EXECUTION, PERFORMANCE, OR SUBJECT MATTER OF THIS AGREEMENT SHALL NOT EXCEED THE AMOUNT OF THE FEES PAID BY MERCHANT TO SERVICERS FOR THE SIX MONTHS IMMEDIATELY PRECEDING SUCH CLAIM, REGARDLESS OF THE FORM OF ACTION EMPLOYED, WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE.

(e) Notice; Settlement. An indemnified party shall promptly notify the indemnifying party of any notice of any claims that may result in indemnity obligations hereunder. An indemnifying party under this section shall not be liable for or obligated under any settlement of any such action effected without its written consent, which consent shall not be unreasonably withheld, but if settled with such written consent, or if there be a final judgment against any indemnified party in such action, the indemnified party agrees to indemnify and hold harmless any indemnified parties to the extent provided above from and against any loss, claim, damage, liability, or expense by reason of such settlement or judgment.

r. **CONFIDENTIALITY.** All proprietary information of Merchant and Servicers, respectively, or of their respective subsidiaries, affiliates, or parents, directly or indirectly made available to the other by virtue of this Agreement, which will be defined as information

not generally available to the public, including, without limitation, all records, files, customer lists, Merchant Information, and data pertaining to potential existing cardholders or accountholders, will be treated confidentially. Merchant and Servicers, and their respective agents and employees, will not disclose proprietary information to any third party, except to its own subsidiaries, affiliates or parents, without the other party's prior written consent or except as necessary to perform its obligations under this Agreement. Notwithstanding the foregoing, Servicers may make reports to credit bureaus, and disclose to third parties who service Servicers in connection with its business services, any information reasonably needed to service Servicers, provided those parties are bound by confidentiality provisions at least as restrictive as those set forth in this section. Merchant and Servicers will maintain the confidentiality of the terms of this Agreement and will not disclose its terms to any third party, provided, however, that either party may disclose terms to its subsidiaries, affiliates, and parents and to its accountants, legal advisors, and financial advisors.

MERCHANT UNDERSTANDS THAT THIS AGREEMENT SHALL NOT TAKE EFFECT UNTIL MERCHANT HAS BEEN APPROVED BY SERVICERS AND A MERCHANT NUMBER ISSUED.

IN WITNESS WHEREOF, the undersigned warrant by their signatures that the foregoing Agreement has been read and understood, that they have the power and authority to enter into this Agreement, and that this Agreement does constitute a valid and binding obligation of Merchant.

| | |
|---|---|
| **MERCHANT LEGAL NAME** | **CTS HOLDINGS, LLC** |
| Title of Signatory | Title of Signatory |
| Signature | Signature |
| Date Signed | Date Signed & Accepted |

**CITICORP PAYMENT SERVICES, INC.**
By: First Data Merchant Services Corporation pursuant to limited Power of Attorney

Name:_____
     (Please Print or Type)

Title:_____

Date:_____

sv#13.092308.doc